IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GINA M. SHARENOW, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) ) No. 20 CV 06337 |
| THE DRAKE OAK BROOK RESORT LLC, FIRST HOSPITALITY GROUP, INC., and HOSPITALITY STAFFING, INC., | ) Judge John J. Tharp, Jr. ) ) ) ) |
|     Defendants. | ) ) |

**ORDER**

    For the reasons set forth in the Statement below, the defendants' partial motion to dismiss [16] is denied. A telephone status hearing is set for 9:30 a.m. on July 21, 2022. Dial-in information will be provided in a separate docket entry. The parties should confer prior to the hearing as to a schedule to govern the remainder of discovery.

**STATEMENT**

    Defendants First Hospitality Group, Inc., Hospitality Staffing, Inc., and The Drake Oak Brook Resort LLC manage, staff, and operate The Drake Oak Brook hotel outside of Chicago. Plaintiff Gina Sharenow worked there as a sales manager, booking weddings. Then in 2020, in response to the COVID-19 pandemic, the State of Illinois imposed a range of public health restrictions on businesses. Among them was a restriction that limited indoor venues to fifty attendees. As Ms. Sharenow tells it, the hotel initially circumvented this restriction by counting each room within a multi-room venue as a separate venue. By August 2020, however, the Illinois Department of Commerce and Economic Opportunity (DCEO) had caught on and, in partnership with the Illinois Department of Public Health (IDPH), issued guidelines explicitly foreclosing this "loophole." *See* Compl. ¶¶ 41–45, ECF No. 1. Nonetheless, hotel management pressured Ms. Sharenow to ignore the DCEO's guidance. She refused and dutifully curtailed her bookings. For this, she says, the defendants fired her.

    Ms. Sharenow now claims damages for retaliatory discharge under the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/20, and the common law.[1] The defendants move to

---

[1] Ms. Sharenow's complaint also includes a claim for unpaid overtime pursuant to the Fair Labor Standards Act, 29 U.S.C. § 207, and the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/4a, and a claim for reimbursement of employee expenses pursuant to the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/9.5. The defendants' motion to dismiss does not challenge the plaintiff's wage and reimbursement claims. The FLSA claim provides the

dismiss under Federal Rule of Civil Procedure 12(b)(6). A motion under Rule 12(b)(6) tests the sufficiency of Ms. Sharenow's complaint. To avoid dismissal, her complaint—including all reasonable inferences drawn from it—need only state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). For this purpose, the complaint's factual allegations are accepted as true. *Id*.

The defendants' principal contention is that the DCEO guidelines Ms. Sharenow invoked did not constitute a "law, rule, or regulation" or a "clearly mandated public policy," necessary components of a retaliatory discharge claim under the Whistleblower Act and the common law, respectively. In the alternative, they contend Ms. Sharenow's claim is preempted by the National Labor Relations Act, 29 U.S.C. §§ 157–69. Neither argument has merit.

    **I.**    **Illinois Whistleblower Act**

Section 20 of the Illinois Whistleblower Act prohibits an employer from "retaliat[ing] against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation . . . ." 740 Ill. Comp. Stat. 174/20. "To state a claim under section 20 of the Whistleblower Act, a plaintiff must therefore sufficiently allege not only that he or she refused to participate in the activity but also that the activity violated a statute, rule, or regulation." *Roberts v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 2019 IL 123594, ¶ 42, 135 N.E.3d 891, 900–01. Here, Ms. Sharenow says she was fired for refusing to book weddings at The Drake in contravention of DCEO guidelines. The defendants only argue that those guidelines do not represent a law, rule, or regulation. The guidelines, however, need not embody laws, rules, or regulations themselves; all that matters at this stage is whether Ms. Sharenow has plausibly alleged that violation of the guidelines "***would result*** in a violation of a State or federal law, rule, or regulation." *See* 740 Ill. Comp. Stat. 174/20 (emphasis added). She has.

The guidelines in question ultimately derived from two statutory authorities. The first is the IDPH Act, which empowers the IDPH to "adopt, promulgate, repeal and amend rules and regulations" it deems necessary to "restrict and suppress" "dangerously contagious or infectious diseases, especially [those] existing in epidemic form." 20 Ill. Comp. Stat. 2305/2(a). The second is the Illinois Emergency Management Agency Act, which empowers the Governor of Illinois to declare by proclamation that a disaster exists and thereby "suspend the provisions of any regulatory statute prescribing procedures for . . . the orders, rules and regulations of any State agency . . . ." *Id.* § 3305/7. In other words, a disaster declaration allows the Governor and the IDPH to forego the Illinois Administrative Procedure Act when issuing rules and regulations to fight infectious diseases.

In March 2020, following the outbreak of COVID-19, Governor Pritzker issued the first in a series of 30-day disaster proclamations. Ill. Gubernatorial Disaster Proclamation (Mar. 9, 2020).[2] He then issued a series of executive orders imposing public health requirements on

---

basis for federal question subject matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

    [2] The defendants suggest that "it remains unclear whether the Governor retains [post-proclamation] emergency powers after the initial 30-day period." Mem. in Supp. of Mot. to Dismiss 8, ECF No. 17. Not so. *See Fox Fire Tavern, LLC v. Pritzker*, 2020 IL App (2d) 200623,

various businesses and industries. The executive order relevant to this case allowed for the operation of indoor venues and meeting spaces but only "with the lesser of fifty attendees or fifty percent of room capacity, and in accordance with DCEO guidance." Ill. Exec. Order No. 2020-43 ¶ 3(e) (June 6, 2020) ("EO-43"). In August 2020, DCEO guidance, issued in partnership with the IDPH, clarified that this 50-person limitation could not be circumvented by splitting one wedding party among multiple rooms of a multi-room venue. Compl. ¶¶ 43–45, ECF No. 1; Ex. 3 to Resp. 4, ECF No. 21-1 (Restore Illinois Phase 4 Guidelines).

EO-43 expressly states that "[b]usinesses must follow guidance provided or published by the [DCEO] regarding safety measures . . . ." EO-43 ¶ 6. It is therefore plausible that violation of DCEO guidance would have led to violation of EO-43. The remaining question then is whether EO-43 is itself a law, rule, or regulation. It is:

> The [Illinois COVID-19 pandemic] executive orders . . . had the force of law and could be enforced with coercive sanctions against private businesses and persons. That is because the legislature authorized the governor to take such emergency measures to protect public health and to impose such consequences for violations. When Governor Pritzker issued the closure orders, he was acting under statutory authority that enabled him to regulate . . . [however] necessary to promote and secure the safety and protection of the civilian population. These executive orders thus . . . fell well within what we understand to be laws, just as rules and adjudications by executive agencies acting under legislative grants of authority have binding force of law.

*Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1009 (7th Cir. 2021) (internal quotations and citations omitted).

Although the precise question answered by the *Bradley* Court was whether the COVID-19 executive orders were "laws" within the context of an insurance policy's "ordinance or law" exclusion, nothing compels a different conclusion here. *See Brown v. Biomat USA, Inc.*, No. 20-cv-05437, 2021 WL 3187599, at *3 (N.D. Ill. July 28, 2021) (holding COVID-19 executive orders are "rules" within the ordinary meaning of the Whistleblower Act because they are "edicts that citizens must obey"); *see also Griffin-Thomas v. La Rabida Children's Hosp.*, No. 21-cv-02033, 2022 WL 103705, at *5 (N.D. Ill. Jan. 11, 2022) (holding City of Chicago's COVID-19 quarantine order to be a law, rule, or regulation under the Whistleblower Act). In fact, the enforcement provision of EO-43 specifically cites the Illinois Whistleblower Act to signal, emphatically, that retaliation based on the order falls within the Act's ambit. *See* EO-43 ¶ 6.

---

¶ 22–44, 161 N.E.3d 1190, 1196–1200 ("[B]oth the [Illinois Emergency Management Agency] Act and subsequent statutes confirm the Governor's authority to issue successive proclamations arising from a single, ongoing disaster . . . ."); *Walsh v. SSC Westchester Operating Co. LLC*, No. 20-cv-04505, 2022 WL 846901, at *3 (N.D. Ill. Mar. 22, 2022) (same). Regardless, the defendants do not clearly explain how a contrary determination would affect the analysis here.

3

In sum, Ms. Sharenow alleged she was fired because she refused to violate DCEO guidance; that violation would have plausibly resulted in a violation of EO-43; EO-43 is a law, rule, or regulation; therefore, Ms. Sharenow's claim under the Illinois Whistleblower Act is sufficient.

## II. Common Law Retaliatory Discharge

In Illinois, an employer may discharge an at-will employee for any or no reason. *Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494, 500, 911 N.E.2d 369, 374 (2009). A narrow exception to this general rule arises when the discharge is retaliatory. *Id*. "To state a claim for retaliatory discharge, an employee must plead that (1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities, and (3) the discharge violates a clearly mandated public policy." *Roberts*, 2019 IL 123594, ¶ 23, 135 N.E.3d at 896. The defendants only challenge the third element.

There is no precise definition for what constitutes a clearly mandated public policy. *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878 (1981). "In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively." *Id*. In this regard, "[t]here is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens." *Id*. at 132, 421 N.E.2d at 879. Hence, "[p]olicies affecting the health and safety of citizens are sufficient to support a retaliatory discharge claim . . . ." *DiPietro v. GATX Corp.*, 2020 IL App (1st) 192196, ¶ 40, 167 N.E.3d 247, 257.

The public policy in question here, evinced by EO-43, cannot be clearer: "protecting the health and safety of Illinoisans is among the most important functions of State government . . . ." EO-43 pmbl. Because Ms. Sharenow was allegedly fired for adhering to EO-43, her discharge unequivocally violates a clearly mandated public policy sufficient to support a retaliatory discharge claim. At least three other courts have reached the same conclusion. *See Johnson v. Gerresheimer Glass Inc.*, No. 21-cv-04079, 2022 WL 117768, at *9–11 (N.D. Ill. Jan. 12, 2022); *Brown*, 2021 WL 3187599, at *3–4; Mem. Op. & Order at 2–3, *Mazurkiewicz v. Nw. Mem'l Hosp.*, No. 2020-L-3511 (Ill. Cir. Ct. Sept. 15, 2020).

Arguing against this conclusion, the defendants assert that the public policy mandate here was not clear. *See generally Turner*, 233 Ill. 2d at 503, 911 N.E.2d at 375 ("An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations."). Specifically, the defendants say the DCEO guidelines Ms. Sharenow relied on were "shifting." Mem. in Supp. of Mot. to Dismiss 9, ECF No. 17. All the complaint says, however, is that the DCEO guidelines were updated in early August 2020 to close the wedding venue "loophole," and Ms. Sharenow took action to abide by them soon after. *See* Compl. ¶¶ 41–45, ECF No. 1. Simply because something is novel does not make it unclear. (In any event, EO-43, the operative executive order at the time, had been in force for over two months.) And because both the guidelines and EO-43 tailored quantifiable restrictions to specific businesses and industries, the public policy mandate they embody was clear.

The defendants also assert that Ms. Sharenow's conduct did not affect the citizens of Illinois collectively. Mem. in Supp. of Mot. to Dismiss 9, ECF No. 17. This misapprehends the law. It is not the plaintiff's conduct but the violated public policy that must affect the citizens of Illinois collectively. *See Palmateer*, 85 Ill. 2d at 130, 421 N.E.2d at 878. COVID-19 was a global pandemic; hence, all of Illinois was affected. *See* State of Ill. Coronavirus Response, https://coronavirus.illinois.gov (last visited June 2, 2022) (recording 3,313,162 COVID-19 cases and 33,844 deaths within Illinois). Accordingly, EO-43 applied to the entire state. Ms. Sharenow's claim under the common law is sufficient.

### III. *Garmon* Preemption

Finally, the defendants argue Ms. Sharenow's retaliatory discharge claim is preempted by the National Labor Relations Act (NLRA). The NLRA is designed to protect workers' freedom of association and to encourage collective bargaining "for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U.S.C. § 151. Accordingly, sections 7 and 8 of the Act protect workers' right to engage in "concerted activities" and prohibit unfair labor practices. *Id*. §§ 157–58. In *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*, the Supreme Court held that "[w]hen an activity is arguably subject to [section] 7 or [section] 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U.S. 236, 245 (1959). "[T]he word 'arguably' . . . mean[s] that the party claiming pre-emption is required to demonstrate that his case is one that the Board could legally decide in his favor." *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 395 (1986).

*Garmon* preemption, then, is an affirmative defense, and pleadings need not anticipate or attempt to circumvent affirmative defenses. *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). Thus, motions to dismiss based on preemption are only granted if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014) (internal quotations omitted). "In other words, the plaintiff must affirmatively plead himself out of court . . . ." *Id*. That has not happened here.

Attempting to show otherwise, the defendants point to a National Labor Relations Board (NLRB) charge Ms. Sharenow filed after her termination. The charge claimed before the NLRB that the defendants engaged in unfair labor practices as defined by section 8 of the National Labor Relations Act. Specifically, it alleged that the defendants terminated Ms. Sharenow "because she engaged in protected and concerted activities associated with the COVID-19 Pandemic." Ex. B to Mem. in Supp. of Mot. to Dismiss 5, ECF No. 17-1. By filing this charge, the defendants say, Ms. Sharenow "essentially admitted that any potential legal remedy to which she is entitled may only be granted under the NLRA." Mem. in Supp. of Mot. to Dismiss 6, ECF No. 17. This conclusion is off-the-mark for two independent reasons.

First, the defendants, not Ms. Sharenow, introduced the charge by attaching it to their motion to dismiss. Courts are generally constrained by the complaint in ruling on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Documents attached to a motion to dismiss may only be

considered if they are referenced in the complaint and central to a claim. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). Ms. Sharenow's NLRB charge is neither.

Second, even if this Court were to consider Ms. Sharenow's charge, she withdrew the charge roughly two months after she filed it. *See* Ex. D to Mem. in Supp. of Mot. to Dismiss 1, ECF No. 17-1. Therefore, any factual allegations within it are not binding. *See Dabertin v. HCR Manor Care, Inc.*, 68 F. Supp. 2d 998, 1000 (N.D. Ill. 1999) (discussing withdrawn judicial admissions). Moreover, Ms. Sharenow's purported admission that her "concerted activities" were "protected" by the NLRA is a legal conclusion that this Court would not be obliged to accept in any event. *See id.* ("It is well established that judicial admissions on questions of law have no legal effect.").

Notwithstanding the defendants' introduction of Ms. Sharenow's previously withdrawn NLRB charge, then, Ms. Sharenow has not pled herself out of court and her complaint is otherwise sufficient. It is therefore procedurally proper to end the analysis here. Nonetheless, both parties have briefed the issue of *Garmon* preemption, and because it is a question of law, some examination is merited.

As discussed, *Garmon* preemption applies only when the conduct at issue is arguably prohibited or protected by the NLRA. Section 8 of the NLRA prohibits, among other things, interference with the exercise of rights guaranteed by section 7. 29 U.S.C. § 158(a)(1). Section 7, in turn, guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and ***to engage in*** other ***concerted activities for the purpose of*** collective bargaining or other ***mutual aid or protection*** . . . ." *Id.* § 157 (emphasis added).

The defendants here selectively point to the portions of section 7 emphasized above to contend that the NLRA arguably protects the activity Ms. Sharenow was fired for. They say that Ms. Sharenow's insubordinate compliance with DCEO guidelines was concerted activity designed to protect her fellow hotel employees from COVID-19. Reply 3, ECF No. 22. This mischaracterizes the alleged facts in two ways.

First, Ms. Sharenow's activity was not principally designed to protect her fellow employees; instead, it was designed to comply with State law. The fact that such State law had the incidental effect of protecting all Illinoisians does not bring Ms. Sharenow's compliance under the NLRA's protection.

> [T]here is no suggestion in the legislative history of the [NLRA] that Congress intended to disturb the myriad state laws . . . [that] were unrelated in any way to the processes of bargaining or self-organization. To the contrary, . . . Congress developed the framework for self-organization and collective bargaining of the NLRA within the larger body of state law promoting public health and safety. . . . States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws,

6

> laws affecting occupational health and safety are only a few examples.

*Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985) (citations and quotations omitted). Hence, states may "enforce certain laws of general applicability even though aspects of the challenged conduct were arguably prohibited by § 8 of the NLRA." *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 194–95 (1978).

Second, despite the defendants' characterization, Ms. Sharenow's compliance with DCEO guidelines was not "concerted activity" within the meaning of the NLRA. "The NLRA does not protect an employee acting alone to complain about an issue, even if the issue concerns mutual aid or protection." *Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 576 (9th Cir. 2022). Nevertheless, the term *concerted activity* in section 7 of the NLRA does embrace lone acts of individual employees if the act stemmed from or logically grew out of prior concerted activity. *Id.* at 576–77. But here, there is no allegation that Ms. Sharenow invoked a right granted to her by a collective bargaining agreement when she defiantly complied with DCEO guidelines. *Cf. LaBuhn v. Bulkmatic Transp. Co.*, 865 F.2d 119, 123 (7th Cir. 1988). In fact, there is absolutely no inference that the conduct at issue had anything to do with self-organizing or collective bargaining. *Garmon* preemption does not apply.

For the foregoing reasons, the defendants' motion to dismiss is denied.

Date: July 13, 2022

John J. Tharp, Jr.
United States District Judge